**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| RIVET AND RIDGE LLC and SEAN ENGLISH,<br><br>Plaintiffs,<br><br>v.<br><br>CANIDIUM LLC,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:26-cv-2592-KAS |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STAY LITIGATION PENDING COMPLETION OF MANDATORY ALTERNATIVE DISPUTE RESOLUTION PROCEDURE**

Plaintiffs Rivet and Ridge LLC ("R&R") and Sean English ("Mr. English") hereby submit their opposition to the Motion to Stay Litigation Pending Completion of Mandatory Alternative Dispute Resolution Procedure (the "Motion") [Dkt. No. 14] filed by Defendant Canidium LLC ("Canidium"). In opposition to the Motion, Plaintiffs state as follows:

**INTRODUCTION**

In an effort to force arbitration, Canidium seeks to create the impression that all of Plaintiffs' claims arise from or relate to a single contract—the Corp to Corp Employment Agreement. (Motion Ex. B.) This is inaccurate. In reality, the Corp to Corp Employment Agreement is just one contract among several governing the parties' relationships. In chronological order, the parties to this action entered into at least the following contracts:

- On August 22, 2025, Mr. English entered into a Master Contractor Agreement, a Self-Bill Agreement, and a Statement of Work with an agent for Investigo LLC ("Investigo"), whereby Mr. English agreed to provide services to Canidium. True and correct copies of these contracts are

attached hereto as **Exhibit 1**. ***These contracts contain no arbitration clauses or other dispute resolution terms.***

- On November 13, 2025, Rivet & Ridge entered into an Agent of Record Agreement with Investigo's agent. A true and correct copy of the Agent of Record Agreement is attached hereto as **Exhibit 2**. ***This Agent of Record Agreement contains no arbitration clause, but in fact calls for disputes to be decided by litigation in the state and federal courts of Colorado.***
- On January 29, 2026, R&R and Canidium entered into the Corp to Corp Employment Agreement, whereby R&R agreed to provide the services of ***only*** Brandon Poirier to Canidium. (Motion Ex. B.) ***This Corp to Corp Employment Agreement contains the arbitration clause Canidium references in its Motion.***
- On approximately February 18, 2026, R&R entered into an oral contract with Canidium, whereby R&R agreed to provide the services of Becky Willis, Chris Lockley, and Jake Smith to Canidium. (Complaint [Dkt. No. 1] ¶ 18.) ***This oral agreement included no agreement to arbitrate or other dispute resolution terms.***
- On February 27, 2026, pursuant to the November 13, 2025 Agent of Record Agreement, Mr. English entered into a second Statement of Work with Investigo's agent, whereby Mr. English agreed to provide services to Canidium. A true and correct copy of this SOW is attached hereto as **Exhibit 3**. ***This Statement of Work contains no arbitration clause, but it remains subject to the Agent of Record Agreement's requirement that***

> ***disputes will be resolved through litigation filed in the state or federal courts of Colorado.*** (Ex. 2 § 16.)

In short, in its Motion, Canidium cherry-picks the one agreement amongst five that contains an arbitration clause and attempts to utilize that clause to drag all of Plaintiffs' claims into arbitration. The Corp to Corp Employment Agreement is a limited-scope contract, providing only for the short-term engagement of Mr. Poirier by Canidium. In this context, it is clear that the parties only intended for the arbitration clause to apply to this particular agreement. They did not intend for this arbitration clause to expand into every aspect of the parties' business dealings. If this is what they had intended they could have incorporated the Corp to Corp Employment Agreement or its arbitration clause into their other contracts. They did not. And as a result, Plaintiffs' breach of contract claims relating to Mr. Poirier's services are the only claims that are arbitrable.

What's worse, there should be no dispute between the parties relating to the Corp to Corp Employment Agreement. Canidium authorized Mr. Poirier to perform the work, he did so, and R&R is entitled to compensation for those services. Canidium has pled no defense and provided no explanation for its failure to pay R&R for Mr. Poirier's services, which makes its attempt to stretch the dispute resolution clause in the Corp to Corp Agreement beyond its natural scope stand out as a red herring.

Moreover, the arbitration clause in the Corp to Corp Employment Agreement does not extend to R&R's tort claims. Those tortious interference and defamation claims arise from statements Canidium made to Investigo ***after*** performance of all of the parties' agreements. They do not implicate rights and obligations under the parties' agreements, as would be required for these tort claims to be arbitrable.

Further, a stay of this action pending arbitration would be inappropriate. The arbitrable claims concerning Mr. Poirier's services neither have a preclusive effect on the nonarbitrable claims nor do they predominate over the non-arbitrable claims. Plaintiffs should be permitted to proceed with the vindication of their non-arbitrable claims, whatever the Court determines those non-arbitrable claims to be. On these bases, Canidium's Motion should be denied.

**LEGAL STANDARD**

"'In resolving a motion to compel arbitration, the court must inquire whether there exists a valid agreement to arbitrate between the parties to the action, and whether the issues being disputed are within the scope of the agreement.'" *Butler v. Pacifica Capital Invs., LLC*, Case No. 2019CV30928, 2020 Colo. Dist. LEXIS 3611, at *7 (Colo. Dist. Ct. Jan. 14, 2020) (quoting *Eychner v. Van Vleet*, 870 P.2d 486, 489 (Colo. App. 1993)). "It is well-settled that 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *N.A. Rugby Union LLC v. United States Rugby Football Union*, 442 P.3d 859, 863 (Colo. 2019) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)); *see also Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 449 Fed. App'x 704, 707-08 (10th Cir. 2011). "The party seeking to compel arbitration bears the burden of establishing that the matter at issue is subject to arbitration." *Tetra Tech Inc. v. Town of Lyons*, 641 F. Supp. 3d 1042, 1055 (D. Colo. 2022).

**ARGUMENT**

Plaintiffs concede that, as to the hours of Brandon Poirier, their contract claim is arbitrable, assuming this portion of the claim is even in dispute. Even that concededly arbitrable slice, however, is not yet referable to arbitration, because no party—including Canidium—has invoked Section 6(c)'s pre-arbitration process. *See* Section IV *infra*. On the other hand,

Defendants admit that Mr. English's claims are not subject to arbitration. (Motion at 11.) Thus, the parties' dispute centers on the following questions:

1. whether that arbitration provision governs the arbitrability of claims arising from other contracts, some of which expressly call for litigation as a means of dispute resolution;

2. whether any non-arbitrable claims should be stayed pending resolution of the claims that could be subjected to arbitration; and

3. whether Canidium can enforce an arbitration provision where it has failed to complete a condition precedent, namely seeking non-binding mediation.

Because the remaining claims are not arbitrable and Canidium has failed to fulfill a condition precedent to its right to enforce the dispute resolution provision, the Court should deny Canidium's Motion.

## I. R&R Only Agreed to Arbitrate the Portion of Its Breach of Contract Claim Relating to the Services of Brandon Poirier, Not Its Remaining Claims.

Because arbitration is a matter of contract, "'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *N.A. Rugby Union*, 442 P.3d at 863 (quoting *United Steelworkers of Am.*, 363 U.S. at 582); *see also Cummings v. FedEx Ground Package Sys., Inc.*, 404 F.3d 1258, 1262 (10th Cir. 2005). Simply put, R&R did not agree to arbitrate its claims with Canidium, other than those relating to the services of Brandon Poirier.

Canidium's argument that R&R is bound to arbitrate all of its claims seems to be premised upon a mischaracterization of the parties' agreements. Particularly, Canidium suggests that "[p]ursuant to the [Corp to Corp Employment] Agreement, R&R agreed to provide services as a consultant to Canidium…." (Motion at 2.) This misstates the terms of the Corp to Corp Employment Agreement. Under that contract, R&R did not agree to work "***as a consultant***" for

Canidium; rather, R&R agreed to provide Canidium with the services of ***a consultant***—*i.e.*, Brandon Poirier. (Motion Ex. B § 1(a) (stating that R&R "will make available any named Consultant on the attached Work Order ('CONSULTANT') to provide consulting and project delivery services…").

The scope of the Corp to Corp Employment Agreement is narrow. It only pertains to Canidium's utilization of the services of Brandon Poirier for approximately one month. The Corp to Corp Employment Agreement is not framed as a master services agreement, where the parties contemplated R&R rendering the services of additional personnel under that agreement. Instead, it is an agreement for the limited services of a single consultant.

Accordingly, R&R does not plead its contract claim (other than for the services of Brandon Poirier) as originating from the Corp to Corp Employment Agreement. Rather, R&R pleads that Canidium engaged R&R's other personnel—Becky Willis, Chris Lockley, and Jake Smith—through an oral contract, separate and distinct from the Corp to Corp Employment Agreement. (Complaint [Dkt. No. 1] ¶¶ 18-19, 21-25, 39.) This oral agreement did not include an arbitration provision. Canidium instructed R&R personnel to perform services on the project, and the R&R personnel complied with an expectation of payment.

This distinction is important for purposes of resolving Canidium's Motion. In order to determine the scope of an arbitration clause, a court "'must strive to ascertain and give effect to the mutual intent of the parties and must consider the subject matter and purposes to be accomplished by the agreement.'" *Butler*, 2020 Colo. Dist. LEXIS 3611, at *7 (quoting *Eychner*, 870 P.2d at 490). "Ultimately, the parties' reasonable expectations must determine the reach of the arbitration obligation." *Breaker v. Corrosion Control Corp.*, 23 P.3d 1278, 1283 (Colo. App. 2001).

R&R agreed to "[r]esolution of disputes between the parties" by arbitration within the narrow context of the Corp to Corp Employment Agreement. (Motion Ex. B § 6(c).) There were no arbitration terms in the parties' oral agreement, and the parties did not incorporate the Corp to Corp Employment Agreement into their oral agreement by reference. Under these circumstances, R&R cannot be bound by the arbitration clause for any claims other than the portion of the breach of contract claim addressing the services of Brandon Poirier. *See Breaker*, 23 P.3d at 1283-84 (refusing to apply an arbitration clause in a purchase agreement to a dispute over a related employment agreement where "the arbitration provision made no reference to any disputes arising out of" the employment agreement, "the employment agreement made no reference to arbitration," and there was "no indication that the employment agreement incorporated any term of the purchase agreement").

In their pleading, Plaintiffs have been clear in asserting that their non-Poirier-related claims arise from an oral contract. However, even assuming *arguendo* that these claims do arise from a written contract, there is no reason to prefer the Corp to Corp Employment Agreement over the Agent of Record Agreement between R&R and Investigo's agent. (*See generally* Ex. 2.) Both agreements generally provide for R&R to supply a particular consultant's services to Canidium. (*Compare* Ex. 2 *with* Motion Ex. B.) However, the two contracts have disparate dispute resolution processes, with the Corp to Corp Employment Agreement calling for arbitration and the Agent of Record Agreement requiring litigation in Colorado courts. (*Compare* Ex. 2 § 16 *with* Motion Ex. B § 6(c).)

The parties entered into a patchwork of contracts covering the services provided to Canidium, only one of which included an agreement to arbitrate. The parties here could have entered into a single contract to govern their various relationships. They did not do so, which

indicates a desire to submit different disputes to different tribunals. The court's holding in *Breaker* is instructive. In that case, the parties had entered into two separate but related contracts—a purchase agreement containing an arbitration clause and an employment agreement with no such clause. In holding that the arbitration clause in the purchase agreement did not extend to claims under the employment agreement, the court noted:

> Given the relationship among the three parties, ***these two agreements could have been expressed in a single contractual document***. However, the fact that the parties chose to execute two separate agreements emphasizes that ***their mutual intent was to treat the obligations established by each separately***. The two documents disclose an intent to have disputes arising under two contracts resolved by separate tribunals—an arbitrator for disputes under the purchase agreement, and the courts for those under the employment agreement.

*Breaker*, 23 P.3d at 1284 (emphasis added). The same result should follow here. A stray arbitration clause in one narrow agreement for the services of one consultant is insufficient to evince a "mutual intent" to arbitrate all claims relating to all contracts between R&R and Canidium. *See id*. On that basis, R&R is entitled to litigate its breach of contract claims against Canidium, and the Motion should be denied.

## II. R&R's Tort Claims Are Not Subject to Arbitration.

Even if this Court concludes that R&R's breach of contract claim must be arbitrated, its tort claims demand a different result. Tort claims may be subject to a contractual arbitration clause "[i]f the factual basis [of the claim] implicates the rights and obligations created by a particular agreement…." *Breaker*, 23 P.3d at 1284. Here, Plaintiffs' tortious interference and defamation claims arise from statements Canidium made to Investigo ***after*** performance of all of the parties' agreements. Though numerous, the parties' agreements are simple. Plaintiffs were obligated to provide services, and in exchange, had the right to receive payment; Canidium had the right to receive services from Plaintiffs, and in exchange, had the obligation to make payment

to Plaintiffs. There is nothing in the agreements that govern Canidium's supposed right or obligation to make statements to third-party Investigo. Because Plaintiffs' tort claims rest on completely separate factual bases from the Corp to Corp Employment Agreement, the tort claims are not arbitrable. *See Breaker*, 23 P.3d at 1285 (holding that tortious interference claim was not arbitrable); *Chelsea Family Pharmacy, PLLC v. Medco Health Solutions, Inc.*, 567 F.3d 1191, 1197 (10th Cir. 2009) ("[a] dispute is not subject to arbitration if it involves matters that are 'collateral' to those covered by the clause").

**III. Mr. English's Claims Should Not Be Stayed.**

Additionally, while Canidium requests that this Court stay this litigation pending arbitration, that request seems to rest on the assumption that the Court orders all of R&R's claims to arbitration. (Motion at 11) (asking the Court to "stay English's claims pending completion of R&R's mandatory ADR process"). Plaintiffs contest that this is the proper result. *See supra* Sections I & II. However, it is clear that whatever result the Court reaches on the arbitrability of R&R's claims will inform the method for handling the non-arbitrable claims.

A stay of an entire proceeding is only appropriate "when resolution of the arbitrable claim will have a preclusive effect on the nonarbitrable claim or when 'the arbitrable claims predominate the lawsuit and the nonarbitrable claims are of questionable merit.'" *Chelsea Family Pharmacy*, 567 F.3d at 1200 (quoting *Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 785 (10th Cir. 1998)). On this standard, if this Court concludes that only the Poirier-related breach of contract claims are arbitrable, a stay is obviously inappropriate. Resolution of that limited claim has no preclusive effect on Plaintiffs' other claims, and this narrow claim does not "predominate" over Plaintiffs' other claims.

If the Court determines that R&R's breach of contract claims are arbitrable, while its tort claims are not, a stay is still inappropriate. As set forth above, R&R's tort claims arise from Canidium's statements ***after*** R&R's completion of its contractual performance, and these claims are distinct from the supposedly arbitrable contract claims. Under these circumstances, a stay is inappropriate. *See Chelsea Family Pharmacy*, 567 F.3d at 1200 (refusing to stay non-arbitrable claims because "distinct and unrelated" arbitrable claims "cannot have a preclusive effect on the nonarbitrable…claim; one does not 'predominate' over the other").

Though a closer case, the same result should follow even if this Court determines that all of R&R's claims are arbitrable and only Mr. English's claims remain before this Court. Mr. English has a right to pursue his individual claims. An arbitral determination that Canidium did not defame R&R or tortiously interfere with R&R's relationships has no bearing—and therefore no preclusive effect—on Mr. English's claims. A fact-finder could easily determine that Canidium defamed Mr. English but not R&R, or *vice versa*, without any internal inconsistency. One claim is not dependent upon the other, and thus, there is no principled reason to foreclose Mr. English's ability to pursue his claims. Canidium's request for a stay of all proceedings should be denied.[1]

---

[1] In support of the assertion that Plaintiffs' tort claims are "weak on the merits," Canidium references an affidavit from Robert Woodhouse of Investigo for the notion that Canidium had nothing to do with Investigo's discontinuation of its relationship with R&R and Mr. English. (Motion at 11 & Ex. E.) It is unsurprising that Investigo was willing to provide this self-serving and supportive affidavit to Canidium, one of its own clients. However, it is also inappropriate for Canidium to delve into the merits of this dispute at this preliminary stage of proceedings, when Plaintiffs have had no opportunity to conduct discovery. At this stage, the Court should consider only factual matters pertaining to the arbitrability of the claims before this Court and should otherwise take the well-pled allegations of Plaintiffs' Complaint at face value.

**IV. Canidium Failed to Complete a Condition Precedent to Enforce the Dispute Resolution Terms of the Corp to Corp Employment Agreement.**

Section 3 of the FAA authorizes a stay only in aid of an arbitration that the parties' agreement presently requires. A court may stay the trial of an action only upon "being satisfied that the issue involved in such suit or proceeding is referable to arbitration" under a written agreement, and only where "the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. Neither requirement is met here, because the arbitration obligation Canidium seeks to enforce has not been triggered.

Section 6(c) does not impose a freestanding duty to arbitrate; it prescribes a sequence. Resolution of disputes "will first be attempted" through good-faith negotiation between senior management; "[i]f management is unable to resolve the dispute within thirty (30) days, then by non-binding mediation utilizing a mutually agreed upon qualified mediator"; "and then if unable to resolve by such mediation, by binding arbitration." (Motion Ex. B § 6(c).) By its plain terms, binding arbitration is the final step in the sequence, and the duty to arbitrate arises only if a mediation actually takes place and fails. Completion of the mediation step is a condition precedent to any obligation to arbitrate—and, by extension, to any invocation of the FAA.

Courts confronting materially identical negotiate-mediate-arbitrate provisions have held that, until the mediation step is invoked, the arbitration provision "has not been activated and the FAA does not apply." *Kemiron Atl., Inc. v. Aguakem Int'l, Inc.*, 290 F.3d 1287, 1291 (11th Cir. 2002). In *Kemiron*, the parties' contract provided that disputes would be mediated upon a party's request and, only if mediation failed, submitted to arbitration under the Commercial Arbitration Rules of the American Arbitration Association—the same rules Section 6(c) references here. *See Id.* at 1288-89. The supplier sued over unpaid invoices, and the defendant—exactly like Canidium here—moved under Section 3 of the FAA to stay the litigation pending completion of

the contractual dispute resolution process. The Eleventh Circuit affirmed the denial of the stay: "to invoke the arbitration provision," a party first had to take the contractual steps, and "[b]ecause neither party requested mediation, the arbitration provision has not been activated and the FAA does not apply." *Id.* at 1290-91. By stacking "conditions precedent before arbitration can take place," the parties "clearly intended to make arbitration a dispute resolution mechanism of last resort"—and "[t]he FAA's policy in favor of arbitration does not operate without regard to the wishes of the contracting parties." *Id.* at 1291 (citing *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995)).

The First Circuit is in accord. In *HIM Portland, LLC v. DeVito Builders, Inc.*, 317 F.3d 41 (1st Cir. 2003), the court held that a party that never requested mediation under a mediate-then-arbitrate clause could not invoke the FAA at all: "[b]ecause the parties intentionally conditioned arbitration upon either party's request for mediation," the movant's "failure to request mediation preclude[d] it from compelling arbitration under the FAA." *Id.* at 42. Where the contractual conditions precedent to arbitration remain unsatisfied, there is no ripe arbitration obligation for a federal court to enforce or protect. *Id.* at 42-44.

That is Canidium's posture precisely. Canidium has never requested non-binding mediation, never proposed a mediator, and never otherwise invoked Section 6(c). Its April 13, 2026 response to R&R's demand letter was a settlement counteroffer conditioned on "a mutual settlement and release of all claims"—it said nothing about mediation. (Motion Ex. D.) Its Answer pleads sixteen enumerated defenses; none mentions Section 6(c) or its dispute resolution procedure. And while the Motion faults Plaintiffs for filing suit without mediating, it nowhere alleges that Canidium ever proposed the mediation it now brands mandatory—and it conspicuously declines to commit Canidium to commencing one.

On Canidium's own account, the parties reached impasse by mid-April 2026. (Motion at 6.) From that moment, Section 6(c)'s mediation step—"non-binding mediation utilizing a mutually agreed upon qualified mediator"—was equally available to both parties, and either could have set it in motion simply by proposing a mediator. Neither did, including Canidium. Under the plain language of Section 6(c) and the reasoning of *Kemiron* and *HIM Portland*, the arbitration provision "has not been activated," no issue in this action is presently "referable to arbitration," and Section 3 supplies no authority to stay this case. 9 U.S.C. § 3; *Kemiron*, 290 F.3d at 1291.

The federal policy favoring arbitration cannot fill that gap. A court "may not devise novel rules to favor arbitration over litigation"; it "must hold a party to its arbitration contract just as the court would to any other kind." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022). Ordinary contract law does not permit a party to enforce a right whose conditions precedent remain unsatisfied—least of all where the condition failed because of that party's own inaction. Having never lifted a finger to invoke the process it describes as mandatory, Canidium cannot ask this Court to suspend the entire case in service of that process. *Cf.* 9 U.S.C. § 3 (a stay is available only to an applicant "not in default in proceeding with such arbitration").

The drafting of Section 6(c) confirms the point. Parties who intend ADR to bar the courthouse door know how to say so. The AIA-form clause in *HIM Portland* made mediation "a condition precedent to arbitration *or the institution of legal or equitable proceedings*." 317 F.3d at 42-43 (emphasis added). Section 6(c) contains no such language: it sequences the road to binding arbitration, but it nowhere prohibits filing suit or makes mediation a precondition to litigation. (Motion Ex. B § 6(c).) Canidium's request that the Court freeze this entire action

"pending completion" of steps that no party has invoked would write into the contract a litigation bar the parties never included.

This threshold defect disposes of the Motion in its entirety, without reaching the scope questions addressed above. If Canidium genuinely wishes to mediate, it has never needed—and does not now need—an order of this Court to propose one. What Section 3 does not permit is what Canidium asks: an indefinite suspension of every claim in this case, including the claims of a party (Mr. English) and claims under contracts (the parties' February 2026 oral agreement and the Agent of Record Agreement) that lie entirely outside Section 6(c), all in aid of an arbitration provision whose conditions precedent Canidium itself has never satisfied or even attempted to satisfy. At a minimum, no stay could issue unless and until Canidium actually invokes and pursues the Section 6(c) process—and even then, only as to the narrow portion of this case that provision could ever reach. *See* Sections I-III *supra*.

WHEREFORE, Plaintiffs R&R and Sean English respectfully request that this Court enter an order denying Canidium's Motion and granting Plaintiffs such other and further relief as this Court deems just and proper.

Respectfully submitted,

/s/ *Joshua D. Burns*
Joshua D. Burns, OBA #32967
Drew T. Palmer, OBA #21317

Silverline Legal

1109 N. Bryant Avenue, Suite 100
Edmond, OK 73034
(405) 456-0076
josh@silverline.legal
drew@silverline.legal

**ATTORNEY FOR PLAINTIFFS RIVET AND RIDGE LLC AND SEAN ENGLISH**

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of August, 2026, I electronically transmitted the attached document to the Court Clerk using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Jody N. Duvall
jduvall@cp2law.com

**ATTORNEY FOR DEFENDANT CANIDIUM LLC**

*/s/ Joshua D. Burns*
Joshua D. Burns