**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-cv-02592-KAS

**RIVET AND RIDGE LLC and SEAN ENGLISH,**

Plaintiffs,

v.

**CANIDIUM LLC,**

Defendant.

---

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO STAY LITIGATION PENDING COMPLETION OF MANDATORY ALTERNATIVE DISPUTE RESOLUTION PROCEDURE**

---

Plaintiffs' Opposition (Dkt. No. 19) (the "Response") does not dispute the central premise of the instant motion before the Court (Dkt. No. 14) (the "Motion"): neither party ever requested the non-binding mediation that Section 6(c) of the Corp to Corp Employment Agreement (the "Agreement") requires before any dispute proceeds to binding arbitration. Indeed, Plaintiffs concede that R&R's breach of contract claim is arbitrable "as to the hours of Brandon Poirier." Response at 4. Plaintiffs nonetheless resist a stay of the remainder of this action on four grounds: (1) that a patchwork of other contracts—to which Canidium is not and was never a party—narrows Section 6(c)'s reach; (2) that R&R's tort claims are categorically outside Section 6(c) of the Agreement; (3) that Sean English's ("English") individual claims should proceed regardless of the outcome as to R&R's claims; and (4) that Canidium cannot invoke Section 6(c) because Canidium, too, never formally requested mediation. None of these arguments withstand scrutiny. As explained below, Plaintiffs' "patchwork of contracts" consists of agreements Canidium never signed, never negotiated, and has never been shown to have even seen—these contracts in no way "govern the parties' relationships" (Response at 1) because Canidium is not a party to a single one of the additional written contracts Plaintiffs identify, and Canidium disputes the existence of the alleged "oral contract" Plaintiffs claim exists. Moreover, R&R's tort claims are premised on the same billing dispute the Agreement governs, English's claims should be stayed under the same predominate-claims test Plaintiffs themselves invoke, and Canidium's good-faith engagement with R&R's April 2026 demand—followed by R&R's unilateral decision to sue rather than propose a mediator—distinguishes this case from the authority Plaintiffs cite.

## Argument

### A. Plaintiffs' "Patchwork of Contracts" Cannot Narrow Section 6(c)'s Scope, Because Canidium Was Never a Party to Any of Those Other Agreements.

Plaintiffs' central argument rests entirely on a "patchwork" of five agreements that, they

say, shows the parties intended to litigate everything except Poirier's hours. Response at 1–2. Standing in contrast to Plaintiffs' argument are the documents they attached to the Response. Indeed, the Master Contractor Agreement and Self-Bill Agreement (Resp., Ex. 1) are between CKB Enterprises LLC and Sean English individually, with Investigo LLC identified as "Broker." Canidium is not a signatory to either document, is not identified by name in their operative provisions, and nothing in the record suggests Canidium has ever seen either document.

The Agent of Record Agreement (Resp., Ex. 2) is between DFAS, LLC d/b/a Agile Partnering and R&R; while the term "third party client" and "End Client" are used in the document, Canidium's name does not appear anywhere therein; Canidium is not a signatory; and Canidium did not negotiate or agree to the Agent of Record Agreement. The second Statement of Work (Resp. Ex. 3) is likewise between Agile Partnering and English alone. Canidium is referenced in the document as the "Client"—apparently for identification purposes—exactly as Brandon Poirier is referenced in the Agreement's own Work Order without thereby becoming a contracting party.

None of the three documents submitted by Plaintiffs are "between the parties" to this lawsuit in the sense that matters: Canidium and R&R, or Canidium and English. They are agreements between Plaintiffs and apparent staffing intermediaries who placed Plaintiffs with Canidium as an end client. A dispute-resolution clause in a contract between R&R and its own staffing agent says nothing about what R&R and Canidium agreed to when they later contracted directly with one another. A party cannot be bound by a forum-selection or arbitration clause in a contract it never signed, and the opposite is true: a non-signatory's forum choice in a contract with someone else cannot be attributed to Canidium merely because Canidium is named in it as a client.

Plaintiffs' reliance on *Breaker v. Corrosion Control Corp.*[1] underscores the point rather

[1] 23 P.3d 1278 (Colo. App. 2001).

than helping them. In Breaker, the arbitration clause and the competing, non-arbitration clause both appeared in agreements binding the same two disputing parties—the purchase agreement bound CCC and the plaintiff personally, and so did the employment agreement. The Court's holding that the parties' choice to split their relationship into separate documents reflected an intent to route different disputes to different tribunals depended entirely on that shared-party structure: "the fact that the parties chose to execute two separate agreements emphasizes that their mutual intent was to treat the obligations established by each separately." *Id*. at 1284 (emphasis added). Here, Canidium never chose to split anything because Canidium was never a party to the Master Contractor Agreement, the Self-Bill Agreement, or the Agent of Record Agreement. Those documents cannot reflect any intent—Canidium's or otherwise—about how disputes between Canidium and R&R should be resolved.

This also disposes of Plaintiffs' fallback argument that "there is no reason to prefer" the Agreement over the Agent of Record Agreement. Response at 6. There is every reason—the Agreement is the only contract that Canidium and R&R both signed. The Colorado litigation clause in the Agent of Record Agreement governs disputes between R&R and Agile Partnering, not Canidium. Likewise, the California choice-of-law provision relates to disputes between English and CKB, not Canidium. Plaintiffs cannot invoke a forum clause from a contract Canidium never signed to defeat the forum clause in the one contract Canidium did sign.

Plaintiffs are equally wrong that the Agreement is "not framed as a master services agreement." Response at 5. Section 1(a) of the Agreement provides that R&R "will make available any named Consultant on the attached Work Order" to provide services—language that contemplates naming consultants, plural, over the life of the relationship, not a single, non-renewable engagement tied to Mr. Poirier alone. Motion, Ex. B § 1(a).

The Agreement's structure matters because Plaintiffs' entire theory for excluding the expanded team's hours from Section 6(c) depends on the existence of a separate, freestanding oral contract between R&R and Canidium—one Canidium disputes was ever formed. Contrary to Plaintiffs' characterization, Canidium never requested, authorized, or agreed that Becky Willis, Chris Lockley, or Jake Smith would work on the Sharetec Project, and no oral or other agreement was ever reached between Canidium and R&R or English regarding those individuals' services. *Compare* Compl. ¶¶ 17–25 (alleging such authorization) *with* Motion at 5–6 & Ex. E (Canidium's position that it never authorized the expanded team and that billing their hours was unauthorized). The only contract that indisputably exists between Canidium and R&R is the Agreement.

Plaintiffs cannot manufacture their way out of Section 6(c) by unilaterally labeling a disputed, unformed arrangement an "oral contract" separate from the Agreement. Courts look to the underlying facts, not the parties' preferred labels, in deciding what an arbitration or dispute-resolution clause reaches. *Galbraith v. Clark*, 122 P.3d 1061, 1065 (Colo. App. 2005). If, as Canidium contends, no separate agreement was ever reached for the expanded team's work, then any obligation R&R claims for that work—whether pleaded as breach of contract or quantum meruit—can only be an extension of, or claim arising in connection with, the same Sharetec Project relationship the Agreement governs. Either way, the claim "touches matters" covered by Section 6(c). The Court need not resolve the parties' factual dispute over whether an oral contract was formed to reach that conclusion; to the contrary, because the very existence of the "separate contract" Plaintiffs invoke to escape arbitration is itself disputed, any doubt on that issue should be resolved in favor of the one agreement whose existence and terms are undisputed—the Agreement—consistent with the federal and state policies favoring arbitration of doubtful scope questions. *See Sanchez v. Nitro-Lift Techs. L.L.C.*, 762 F.3d 1139, 1145–46 (10th Cir. 2014).

### B. R&R's Tort Claims Implicate the Parties' Rights and Obligations Under the Agreement and Are Not "Collateral."

Plaintiffs argue their tort claims are "collateral" under *Chelsea Family Pharmacy, PLLC v. Medco Health Solutions, Inc.*,[2] and *Breaker*. Response at 8–9. Both cases are distinguishable. The contract in *Chelsea Family Pharmacy* included a narrow clause—one expressly limited to claims "arising out of or relating to payments…or audit issues," with an express carve-out for termination disputes that the court read as evidence the parties intended to exclude everything else. 567 F.3d at 1196–98. Because the clause was narrow, the Court held that only the plaintiff's payment-related claim was arbitrable, while its separate claim about an unrelated mail-order program was not. *Id*. Section 6(c) is a broad, not narrow, clause—it applies, without subject-matter qualification, to "disputes between the parties," and the only carve-out the parties wrote in relates to Section 4 confidentiality claims. Motion, Ex. B § 6(c). Under the broad/narrow framework both sides invoke, that distinction is dispositive: broad clauses like Section 6(c) extend the presumption of arbitrability even to collateral matters, so long as the claim "implicates issues of contract construction or the parties' rights and obligations under it." Motion at 9 (*quoting Newmont U.S.A. Ltd. v. Ins. Co. of N. Am.*, 615 F.3d 1268, 1274 (10th Cir. 2010)).

R&R's tortious interference and defamation claims meet that standard. The entire premise of Canidium's allegedly defamatory statement is that R&R billed for hours Canidium had not authorized. Canidium's position, consistent throughout this litigation, is that it never authorized Ms. Willis's, Mr. Lockley's, or Mr. Smith's work on the Sharetec Project in the first place, making the statement true rather than false. Compl. ¶¶ 30, 56; Motion at 5–6 & Ex. E. Resolving the truth or falsity of that statement—an element of both claims—requires determining whether the expanded team's hours were ever authorized under the parties' Sharetec Project engagement: a

[2] 567 F.3d 1191 (10th Cir. 2009).

question of the parties' rights and obligations arising from the contractual relationship the Agreement created and, as explained in Section A *supra*, the only undisputed agreement that exists between Canidium and R&R. That is a world apart from the facts of *Breaker*, where the tortious-interference claim concerned an alleged effort to solicit a competing business relationship having nothing to do with the purchase agreement's subject matter. 23 P.3d at 1284–85. Here, the tort claims and the contract claims rise and fall on the identical factual question of whether the expanded team's work was authorized. Under *Chelsea Family Pharmacy*'s own instruction to look to the facts rather than the labels, that shared factual predicate brings the tort claims within Section 6(c)'s broad scope regardless of what they are called. 567 F.3d at 1197–98.

**C. English's Claims Should Be Stayed, and Plaintiffs' Own Predominate/Preclusive-Effect Test Confirms It.**

Plaintiffs devote most of Section III of their Response to arguing that a full stay is appropriate only when "resolution of the arbitrable claim will have a preclusive effect on the nonarbitrable claim" or "the arbitrable claims predominate the lawsuit and the nonarbitrable claims are of questionable merit." Response at 9 (*quoting Chelsea Family Pharm*., 567 F.3d at 1200). Canidium agrees that standard applies here, and avers that it is satisfied on Plaintiffs' own terms once the Court resolves the scope question in Canidium's favor. If all four of R&R's claims are subject to Section 6(c), as explained in Sections A–B, *supra*, the only claims remaining before this Court are English's individual tortious interference and defamation claims, which, by Plaintiffs' own pleading, rest on the identical statement, the identical billing dispute, and the identical course of dealing as R&R's now-arbitrable claims. Compl. ¶¶ 49–64. Arbitrable claims plainly "predominate the lawsuit" when the only claims left behind are ones a fact-finder would otherwise have to adjudicate twice—once as to R&R and once as to English—reaching the same factual questions each time. Further, the Motion already addresses why R&R's tort claims are of

questionable merit, including that Investigo's own Director of Technology has attested that Investigo's decisions concerning Plaintiffs were made independently of, and without influence from, Canidium. Motion at 11, Ex. E.

Plaintiffs' footnote suggesting it is improper to consider the Woodhouse affidavit at this stage misreads their own governing standard. Response at 9 n.1. *Chelsea Family Pharmacy*'s predominate test expressly asks whether the nonarbitrable claims are "of questionable merit"—an inquiry that necessarily looks beyond the four corners of the Complaint. 567 F.3d at 1200. Canidium is not asking the Court to resolve the merits; it is asking the Court to weigh the same threshold factor Plaintiffs' own authority requires.

Independent of that test, Canidium's Motion also asks the Court to exercise its well-established discretion to stay litigation among non-arbitrating parties pending a related dispute-resolution process, to avoid the risk of inconsistent results—relief that does not depend on whether the arbitrable claims technically "predominate." Motion § C (*citing Belnap v. Iasis Healthcare Corp.*, 2017 U.S. Dist. LEXIS 161436 (D. Utah Sept. 29, 2017)). Plaintiffs' Response does not meaningfully engage with this independent basis for staying English's claims, and it should be granted regardless of how the Court resolves the predominate-claims question.

### D. Whether the Mediation Condition Precedent Has Been Satisfied Is a Question for the Arbitrator, Not This Court—and Plaintiffs' Own Failure to Mediate Before Suing Independently Warrants a Stay.

Plaintiffs' final argument—that Canidium cannot enforce Section 6(c) because Canidium did not request mediation—rests on a premise the Supreme Court has twice rejected: that a court, rather than an arbitrator, decides whether a condition precedent to arbitration has been satisfied.

In *Howsam v. Dean Witter Reynolds, Inc.*,[3] the Supreme Court held that while courts decide

[3] 537 U.S. 79 (2002).

"gateway" questions of arbitrability, such as whether the parties have a valid arbitration agreement and whether it covers the dispute, "procedural" questions, including the satisfaction of "time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate," are presumptively for the arbitrator. *Id.* at 84–85. Notably, that case arose from this Circuit—the Tenth Circuit held the condition-precedent question was for the court, and the Supreme Court reversed. *Id*. at 81–82, 85. The Supreme Court reaffirmed and extended that rule in *BG Group PLC v. Republic of Argentina*,[4] holding that a procedural precondition to arbitration—there, a requirement to litigate before arbitrating—is for the arbitrator because it "determines when the contractual duty to arbitrate arises, not whether there is a contractual duty to arbitrate at all."

Applying *Howsam* and *BG Group* to a mediate-then-arbitrate clause materially indistinguishable from Section 6(c), the Fourth Circuit rejected the exact argument Plaintiffs raise here: "[A]rbitrators—not courts—must decide whether a condition precedent to arbitrability has been fulfilled." *Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 563 (4th Cir. 2015). The franchisees in Chorley, like Plaintiffs here, argued that the franchisor could not arbitrate because it had not first sought the mediation their agreement required. *Id*. The Fourth Circuit held that argument "must be decided by the arbitrator, not the court," *id.*, and it expressly considered—and rejected—both cases Plaintiffs cite here: "*HIM Portland*…*Kemiron*…[a]ll of these cases either predate, conflict with, or do not consider *Howsam* and *BG Group*, however, and thus do not control." *Id*. at 563 n.14. The same is true here—*Kemiron* (2002) and *HIM Portland* (2003), advanced by Plaintiffs as dispositive, both predate *BG Group*, and neither grapple with the arbitrator/court divide *Howsam* and *BG Group* analyzed for which they are controlling precedent.

The only apparent case within the Tenth Circuit to address a related question, *Tyrrel v.*

[4] 134 S. Ct. 1198, 1207–08 (2014).

*Maskcara Industries, Inc.*,[5] does not require a different result and is readily distinguishable. In *Tyrrel*, the parties' agreement required mediation to "occur within 60 days from the date on which the mediator is appointed"—an express, self-executing deadline. *Id.* at 1286. A mediator was appointed, the 60-day deadline passed without mediation occurring through the moving party's own delay, and the mediator concluded the moving party had "waived a condition precedent to arbitration." *Id.* The district court's ruling turned on Tenth Circuit waiver doctrine—whether a party's own delay forfeited a right it had already begun to exercise—not on whether an unstarted, undated condition precedent had been satisfied. *See id.* Section 6(c) contains no analogous deadline for completing mediation; its only 30-day period applies to the initial negotiation step, and no mediation has been commenced for either side to let lapse. There is no waiver theory available on these facts, and *Tyrrel* does not speak to the question *Howsam* and *BG Group* resolve: whether a Court or arbitrator decides if a procedural precondition to arbitration has been met.

Because that question belongs to the Section 6(c) process itself—and ultimately to an arbitrator, if the parties reach that stage—the relief Canidium requests does not require this Court to resolve whether a precondition to arbitration has been met. Canidium does not ask the Court to find, as a predicate to relief, precisely how or by whom the mediation step should have been satisfied; Canidium asks only that this litigation be stayed so the parties can return to the process they agreed to, where any dispute about the sequence's satisfaction is properly resolved. Plaintiffs' Argument IV, by contrast, asks this Court to do exactly what *Howsam* and *BG Group* say it should not—adjudicate whether a procedural precondition to arbitration has been satisfied.

In any event, even if the Court reaches the question, Canidium's conduct bears no resemblance to the total inaction in *Kemiron*. Within days of R&R's April 1, 2026 demand letter,

[5] 438 F. Supp. 3d 1279 (D. Utah 2020).

Canidium responded on the merits and offered to pay both outstanding invoices in full in exchange for a global resolution. Motion, Ex. D. It was R&R, not Canidium, that cut the process short by suing rather than proposing a mediator. Motion at 6–7. To remove any doubt about who bears the next move, Canidium remains willing and prepared to propose a qualified mediator within [14] days of any order granting the Motion, which forecloses any argument that Canidium is "in default in proceeding with such arbitration" within the meaning of 9 U.S.C. § 3.

Finally, even if the Court concludes that Section 3 of the FAA does not independently authorize a stay before mediation has been invoked, the Court retains inherent authority to stay proceedings incident to its power to control its own docket, entirely apart from the FAA. *Landis v. North Am. Co.*, 299 U.S. 248, 254–55 (1936).

One final point bears mention. Section 6(c)'s obligation to negotiate and mediate before escalating a dispute binds R&R every bit as much as it binds Canidium. R&R filed this lawsuit without ever proposing mediation, in breach of Section 6(c). Canidium reserves all rights arising from that breach, including its right to seek, by counterclaim, the attorneys' fees and costs it has incurred and will incur defending against litigation that Section 6(c) obligated R&R to postpone. *See, e.g., Gilbane Fed. v. United Infrastructure Projects FZCO*, 275 F. Supp. 3d 1180, 1196 (N.D. Cal. 2017) (awarding, as contract damages, attorneys' fees incurred as a result of a party's breach of a mandatory forum-selection provision). Canidium raises this only to underscore that it is R&R, not Canidium, that has disregarded the process the parties bargained for.

**Conclusion**

For the reasons stated herein and in the Motion, Canidium respectfully requests that the Court grant the Motion and stay this action in its entirety pending completion of ADR as set forth in Section 6(c) of the Agreement.

Respectfully submitted this 31st day of August, 2026.

**COAN, PAYTON & PAYNE, LLC**

*/s/ Jody N. Duvall*
Jody N. Duvall, #49186
103 W. Mountain Ave., Suite 200
Fort Collins, CO 80524
Phone: 970-225-6700
Email: jduvall@cp2law.com
*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of August, 2026, I served a true and correct copy of the foregoing via PACER CM/ECF upon the following:

Joshua D. Burns
Drew T. Palmer
Silverline Legal
1109 N. Bryant Avenue, Suite 100
Edmond, OK 73034
(405) 456-0076
josh@silverline.legal
drew@silverline.legal
*Attorneys for Plaintiffs*

/s/ *Amber Wyatt*
Amber Wyatt, Paralegal
Coan, Payton & Payne, LLC